**Opinion filed November 27, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00334-CR
_____

**BILLY WAYNE MERCHANT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 24356A**

## M E M O R A N D U M   O P I N I O N

The jury convicted Billy Wayne Merchant of the felony offense of possession of methamphetamine in an amount greater than 400 grams with the intent to manufacture. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(f) (West 2010). The trial court assessed his punishment at confinement for a term of forty years. Appellant challenges his conviction in seven issues. We affirm.

*Background Facts*

Sergeant Shay Bailey and Agent Wayne Cockerham of the Taylor County Sherriff's Department's Narcotics Unit were patrolling the Royal Inn, a motel in Abilene, when Sergeant Bailey saw Appellant's car parked in front of one of the motel rooms. Sergeant Bailey testified that the Royal Inn is known as a high traffic area for the sale of narcotics. Sergeant Bailey thought that Appellant had outstanding warrants and he called the department to confirm. Once confirmed, the officers watched the motel room to see whether anyone entered or left the room.

Appellant's girlfriend, Megan Whitman, arrived, and the officers approached her to see if Appellant was in the room. Whitman opened the motel room door, and the officers saw Appellant in the room. Sergeant Bailey told Appellant that he had a warrant to arrest him for evading arrest, and Appellant began backing up farther into the motel room. Appellant said, "Shay it's not mine, Shay it's not mine." Sergeant Bailey stepped into the room and saw what he believed to be a methamphetamine lab on the bathroom counter. Appellant handed Agent Cockerham a container with approximately a gram of methamphetamine in it and said that was the only thing that was his.

Sergeant Bailey testified that the methamphetamine lab was active and was at a stage in the cooking process where someone had to keep the substance in the bottle moving and release pressure from the bottle every few minutes or the bottle would explode. The room was in disarray. There were dirty syringes and needles, digital scales, chemicals, and camp fuel oil cans lying around the room. The officers found another active methamphetamine lab in the room as well as an old methamphetamine lab. The old methamphetamine lab was found underneath the cover of the jacuzzi.

Appellant told Sergeant Bailey that he brought the Coleman fluid, Drano, and "pseudo fed" pills to the motel room where a man named Gene mixed it up for him. Appellant and Gene were going to split the finished product. Gene was going to take most of the product, and Appellant was going to keep enough to support his habit.

William L. Todsen, a forensic scientist with the Texas Department of Public Safety, tested the substance contained in the bottles from the two active labs found at the motel room. Todsen separated the liquid substance from the solid substance, and each contained methamphetamine. The solid substance from the larger bottle weighed 1,740 grams, and the liquid weighed 461.04 grams. Todsen did not separate out the liquid from the solid in the smaller bottle. The substance in the smaller bottle weighed 186.51 grams and also contained methamphetamine. The substance found in the bottles was not a usable finished product. Todsen also tested the small amount of finished product that Appellant handed Agent Cockerham. The finished product weighed 1.12 grams and also contained methamphetamine. The aggregate weight of the finished and unfinished product totaled 2,388.67 grams.

*Sufficiency of the Evidence*

In his fourth and fifth issues, Appellant challenges the legal and factual sufficiency of the evidence. The Texas Court of Criminal Appeals held in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), that there is "no meaningful distinction between the *Jackson v. Virginia*[1] legal-sufficiency standard and the *Clewis*[2] factual-sufficiency standard"; that the *Jackson v. Virginia* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is

---

[1]*Jackson v. Virginia*, 443 U.S. 307 (1979).

[2]*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

3

required to prove beyond a reasonable doubt"; and that "[a]ll other cases to the contrary, including *Clewis*, are overruled." *Brooks*, 323 S.W.3d at 895, 902, 912 (footnotes added). Accordingly, a challenge to the factual sufficiency of the evidence is no longer viable. Under the *Jackson* legal sufficiency standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In order to obtain a conviction for possession with intent to manufacture a controlled substance, the State must link the defendant to an interest in the place where the manufacturing was taking place or to the actual act of manufacturing. *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). If the State proves that the amount of the controlled substance is, by aggregate weight, including adulterants or dilutants, 400 grams or more, the offense is a first-degree felony and is punishable by imprisonment for life or for a term of not more than 99 years or less than 15 years. HEALTH & SAFETY § 481.112(f). "Controlled substance" is defined as "a substance including a drug, an adulterant, and a dilutant." *Id.* § 481.002(5) (West Supp. 2013). "Adulterant and dilutant" is defined as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." *Id.* § 481.002(49). The term "controlled substance" includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance. *Id.* § 481.002(5). The Court of Criminal Appeals has held that the unusable toxic substance found in a methamphetamine lab can be included as part of the aggregate weight of the controlled substance. *Wright v. State*, 201 S.W.3d 765, 770 (Tex. Crim. App. 2006).

4

The evidence at trial showed that Appellant was the only person in the motel room prior to the time that Whitman returned to the room. Whitman testified that she had been gone for two or three hours, and Sergeant Bailey testified that no one entered or left the room for at least fifteen minutes prior to the time that Whitman returned. Sergeant Bailey also testified that the lab was active and that, in order to prevent an explosion, it would be necessary for Appellant to release pressure from the bottle every few minutes. Furthermore, Appellant told Sergeant Bailey that he had brought the items needed to manufacture methamphetamine to the room and that he was going to keep a portion of the finished product. Todsen testified that the aggregate weight of all substances that contained methamphetamine totaled 2,388.67 grams.

Whitman testified that the labs were not set up on the bathroom counter when she left, that she saw the officers find the bottles underneath the cover of the jacuzzi, and that she had no idea that the methamphetamine labs were in the room. The officers testified that the only lab that they found underneath the cover of the jacuzzi was what appeared to be a used lab and that both of the active labs were found on the bathroom counter.

Although the testimony of Whitman and the officers conflicted, the jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. TEX. CODE. CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was entitled to accept or reject any or all of the testimony of any witness. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). In addition, it was within the jury's province to resolve any inconsistencies or conflicts between the witnesses' testimony. *Jackson*, 443 U.S. at 319. We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant possessed methamphetamine in an amount greater

than 400 grams with the intent to manufacture. We overrule Appellant's fourth and fifth issues.

*Constitutionality of Statute*

In his first three issues, Appellant challenges the constitutionality of Section 481.002(49) of the Texas Health and Safety Code. Section 481.002(49) defines "adulterant and dilutant" as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." Appellant asserts in his first issue that the statute is facially unconstitutional because it violates the Equal Protection Clause by subjecting minor drug users, dealers, and manufacturers to the same punishment as major drug dealers and manufacturers. He argues that the statute is not rationally related to the State's interest in punishing major drug dealers more severely than minor drug dealers, under a market-based approach, because it does not require the State to prove the chemical composition and weight of the actual illegal substance.

Appellant contends in his second issue that the statute violates the Due Process Clause because it permits the State to secure a conviction for the possession of "dirt, bong water, bathtub water, lake water, and ocean water" that contain traces of methamphetamine under a heavier weight classification, which is subject to a higher minimum sentence, than the weight classification of the actual usable amount of controlled substance possessed. Under this same reasoning, Appellant alleges in his third issue that the statute violates the Eighth Amendment's prohibition of cruel and unusual punishment. He argues that he should have been punished only for the usable amount of methamphetamine that he possessed—1.12 grams—and not the unusable substance.

In order to preserve an issue for appellate review, a party must make a timely and specific objection at trial. TEX. R. APP. P. 33.1. Appellant did not challenge the constitutionality of Section 481.002(49) at trial. Therefore,

6

Appellant has waived the issues on appeal. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (holding that a defendant may not raise a facial challenge to the constitutionality of a statute for the first time on appeal); *Curry v. State*, 910 S.W.2d 490, 496–97 (Tex. Crim. App. 1995) (holding that the appellant failed to preserve error regarding constitutionality of statute as applied and regarding Eighth Amendment's prohibition on cruel and unusual punishment because he did not object at trial). Moreover, the Court of Criminal Appeals recognized in *Wright* that it "clearly is not absurd to include by[-]products necessary to the manufacturing process" in the definition of "adulterant and dilutant." 201 S.W.3d at 770. We overrule Appellant's first, second, and third issues.

*Motion for Continuance*

In his sixth issue, Appellant argues that the trial court erred when it denied his motion for continuance. The record shows that defense counsel filed a written motion for continuance on the day of trial. The trial court granted the motion for continuance and reset the trial date. Defense counsel did not object to the new trial setting or file any other written motion for continuance. Therefore, there was not an adverse ruling for Appellant to complain about on appeal. Tex. R. App. P. 33.1; *Darty v. State*, 709 S.W.2d 652, 655 (Tex. Crim. App. 1986).

Defense counsel did make an oral motion for continuance at the end of the guilt/innocence phase of trial. He argued that he needed time to secure Appellant's presence so that Appellant could testify. However, an unsworn, oral motion preserves nothing for review. Crim. Proc. arts. 29.03, 29.06–.08 (West 2006); *Anderson v. State*, 301 S.W.3d 276, 278–80 (Tex. Crim. App. 2009). Appellant's sixth issue is overruled.

*Presence of Defendant*

Appellant argues in his final issue that, when the trial court proceeded in Appellant's absence, it violated his due process rights as well as the "open courts"

provision of the Texas Constitution. Appellant does not cite to any authority to support this proposition, nor does Appellant include any record cites in this portion of his brief.

The record shows that Appellant pleaded not guilty to the indictment; that the court took a recess for lunch; and that, when the court reconvened, Appellant was not present. Defense counsel did not object to the continuation of the trial at this time. The trial court later admonished Appellant for continuously being late and informed him that the trial would go on with or without him but that it was not in his interest to continue to be late. When the trial reconvened the next morning, Appellant was again not present. Defense counsel again did not object to the continuation of the trial.

At the end of the guilt/innocence phase, defense counsel asked to reopen the testimony so that he could call Appellant to testify on his own behalf. Appellant was not present, and the trial court denied his request. The trial court found that Appellant was willfully absent from the proceeding and continued with the trial. It was at this point in the proceedings that defense counsel moved for a continuance. Defense counsel argued that Appellant had a right to testify, that he could not get a fair trial without testifying, and that counsel needed time to secure Appellant's presence so that he could testify. Defense counsel did not present any arguments regarding the "open courts" provision of the Texas Constitution. The trial court denied counsel's motion.

Although an accused has the right to be present at trial, he waives that right when he chooses to absent himself from the proceedings. *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985). Subsumed within the right to be present is the right of the accused to testify and to confront witnesses. *Taylor v. United States*, 414 U.S. 17, 18–19 (1973). When the accused waives his right to be present, he also waives his right to testify. *Id.* Article 33.03 of the Texas Code of

8

Criminal Procedure grants the trial court the authority to proceed without the defendant present when the defendant is voluntarily absent from the trial as long as the defendant was present to plead to the indictment or present through jury selection. CRIM. PROC. art. 33.03. The trial court's determination of whether the defendant was voluntarily absent is reviewed for an abuse of discretion. *Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984).

Here, the defendant pleaded not guilty to the indictment in front of the selected jury. The record does not indicate that Appellant was absent when the jury was selected. The trial court admonished Appellant for being late and warned him that the trial would continue regardless of whether he chose to be present. The record supports the trial court's finding that Appellant was voluntarily absent. Therefore, the trial court did not abuse its discretion when it proceeded without Appellant, and the trial court's act of proceeding without Appellant did not violate due process. Because Appellant did not raise a challenge under the "open courts" provision of the Texas Constitution at trial, we decline to address it on appeal. We overrule Appellant's seventh issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY
JUSTICE

November 27, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

9